## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 21-cv-00943-NYW

ELIDE FIRE USA CORP.,

     Plaintiff,

v.

AUTO FIRE GUARD, LLC,
GRANT VAN DER JAGT, and
DOES 1-10,

     Defendants.

---

## ORDER ON MOTION TO DISMISS AND ORDER TO SHOW CAUSE

---

Magistrate Judge Nina Y. Wang

     This matter comes before the court on Auto Fire Guard's Motion to Dismiss the First Amended Complaint and Memorandum in Support of Defendant Auto Fire Guard's Motion to Dismiss the First Amended Complaint (collectively, the "Motion" or "Motion to Dismiss") [Doc. 44; Doc. 44-1] filed on August 25, 2021 by Defendant Auto Fire Guard ("Defendant" or "AFG"). The undersigned considers the Motion pursuant to 28 U.S.C. § 636(c) and Order of Reference for all purposes dated July 30, 2021. [Doc. 29].[1] Upon review of the Motion and the related briefing,

---

[1] This court has obtained consent to magistrate judge jurisdiction for all purposes from Plaintiff and Defendant AFG. *See* [Doc. 25]. However, because Defendant Grant Van Der Jagt was added as a Defendant after the Consent/Nonconsent Form was filed, *see* [Doc. 25; Doc. 30], and has not yet appeared in this case, he has not consented to magistrate judge jurisdiction. See D.C.COLO.LCivR 72.2(f) (requiring that newly added or newly served parties be given opportunity to consent to magistrate-judge jurisdiction). The Tenth Circuit has not spoken on whether consent of unserved, non-appearing Parties is required where the court has nevertheless obtained consent to magistrate judge jurisdiction from all appearing parties. *But see Williams v. King*, 875 F.3d 500, 504 (9th Cir. 2017) (Section 636(c) requires consent of all parties, even unserved parties); *Coleman v. Lab. & Indus. Rev. Comm'n of Wisc.*, 860 F.3d 461, 475 (7th Cir. 2017) (same); *Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) (unserved parties are not yet parties to the action and, thus, their non-consent does not preclude other parties' consent).

the applicable case law, and the entire docket, and being fully advised in the premises, the Motion to Dismiss is **DENIED without prejudice**.

## BACKGROUND

The court draws the following facts from Plaintiff's First Amended Complaint Against Defendants for Patent Infringement; Unfair Competition; and Colorado Consumer Protection Act ("CCPA") C.R.S. § 6-1-101, Et Seq. (the "Amended Complaint") [Doc. 30] and presumes they are true for purposes of the instant Motion. Plaintiff Elide Fire USA Corp. ("Plaintiff" or "Elide Fire") is "an importer, marketer and seller" of a fire prevention and/or suppression product called the "Fireball." [Doc. 30 at ¶ 1]. The Fireball "practices one or more claims of" United States Patent No. 6,796,382 ("the '382 Patent"). [*Id.* at ¶ 3].

The '382 Patent was issued by the United States Patent and Trademark Office ("USPTO") on September 28, 2004. [*Id.* at ¶ 21]. Claim 1 of the '382 Patent recites a fire extinguishing device comprising:

a.   a frangible containment vessel formed from a low-density, rigid plastic foam;

b.   a fire extinguishing material contained within the containment vessel; and

c.   an explosive device contained within the containment vessel, whereby activation of the explosive device breaks the containment vessel and disperses the fire extinguishing material.

---

Ultimately, because the court finds that the Motion to Dismiss should be denied without prejudice and thus this disposition is not dispositive of any claim, defense, or party in this action, the court finds that it may enter an order disposing of the Motion to Dismiss, notwithstanding the lack of consent from Defendant Grant Van Der Jagt. However, as set forth below, Plaintiff is **ORDERED** to **SHOW CAUSE** why the claims against Defendant Van Der Jagt and the Doe Defendants should not be dismissed without prejudice for failure to serve under Rule 4(m) of the Federal Rules of Civil Procedure.

[*Id.* at ¶ 24]; *see also* [Doc. 30-2 at 11 (the '382 Patent)].[2]  In addition, Claim 2 of the '382 Patent claims "[t]he fire extinguishing device of [Claim 1], wherein the containment vessel comprises a substantially spherical body formed from two complimentary half-sections."  [Doc. 30 at ¶ 26; Doc. 30-2 at 11].

Plaintiff is the exclusive licensee of the '382 Patent in the United States and the exclusive distributor of products covered by the '382 Patent in the United States.  [Doc. 30 at ¶ 2].  Thus, Plaintiff has "exclusive rights within the [United States] to use, sell and import the Fireball."  [*Id.* at ¶ 53].  Plaintiff sells the Fireball through its own website as well as third-party e-commerce websites, such as Amazon.  [*Id.* at ¶ 1].

Defendant Auto Fire Guard, LLC ("Defendant" or "AFG") is a direct competitor of Plaintiff.  [*Id.* at ¶ 5].  Defendant markets itself as a supplier of a fire suppressant and/or fire extinguisher product (the "Accused Product" or "Accused Products") and sells the Accused Product through its website and its Facebook page, as well as third-party e-commerce websites. [*Id.* at ¶ 4].  Plaintiff alleges that the Accused Product infringes upon one or more claims of the '382 Patent.  [*Id.* at ¶ 6].  More specifically, Plaintiff alleges that the Accused Product "utilize[s] the fire suppression technology claimed in the '382 Patent," [*id.* at ¶ 41], and is thus covered by the '382 Patent.  [*Id.* at ¶ 59].

---

[2] Typically, a court may only consider the four corners of a complaint when ruling on a motion to dismiss.  *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994).  However, "[a] district court may consider documents (1) referenced in a complaint that are (2) central to a plaintiff's claims, and (3) indisputably authentic when resolving a motion to dismiss without converting the motion to one for summary judgment."  *Thomas v. Kaven*, 765 F.3d 1183, 1197 (10th Cir. 2014).  Because the '382 Patent is referenced in Plaintiff's Amended Complaint, [Doc. 30 at ¶ 24], is central to Plaintiff's claims, *see generally* [*id.*], and no Party challenges its authenticity, the court may properly consider the '382 Patent at this juncture.

Plaintiff alleges that all Defendants—AFG; Grant Van Der Jagt, an officer and director of AFG ("Mr. Van Der Jagt"), *see* [*id.* at ¶ 12]; and ten Doe Defendants—are "suppliers of the [Accused Product], and, without permission or authorization, manufacture, use, sell, offer for sale, and/or import the [Accused Product], which is marketed under various names, sizes, colors and labels . . . either directly or indirectly through [their] subsidiaries or affiliates, to customers throughout the United States."  [*Id.* at ¶ 30].  Plaintiff asserts that Defendants "intentionally had the Accused Products use or incorporate one or more of the claims of the '382 Patent because of the claims' application in the '382 Patent; and there is no substantial non-infringing use for the Accused Products," [*id.* at ¶ 31], and/or have induced or contributed to "the use or incorporation" of one of more claims of the '382 Patent by selling or supplying the Accused Products to third parties with knowledge that these third parties will use or sell these products in the United States. [*Id.* at ¶¶ 35-36].

Moreover, AFG holds itself out as "the American manufacturer and distributor of innovative fire equipment, including the decorative Automatic 'Fireball' Extinguisher."  [*Id.* at ¶ 47].  According to Plaintiff, while AFG claims that its products are designed or manufactured in the United States by using language such as "Made in the U.S." and "Made in Colorado" with respect to its products, [*id.* at ¶¶ 49-50], the Accused Products are manufactured in and imported from China through a company named Safety Life Fire Equipments Co., Ltd.  [*Id.* at ¶ 51].  In addition, Plaintiff alleges that AFG falsely claims that it owns patent rights "to the operation and function of" the Accused Products, [*id.* at ¶ 45], and that Mr. Van Der Jagt "falsely claims that he is the 'inventor' of the Fireball products."  [*Id.* at ¶ 46].  Finally, Plaintiff alleges that AFG falsely claims that it has "UL certification"[3] for the Accused Product.  [*Id.* at ¶ 52].  Plaintiff claims that

---

[3] Plaintiff does not expand on what "UL certification" entails.  *See generally* [Doc. 30].

it has been damaged by customers' decisions, based on AFG's false claims, to purchase the Accused Product from AFG rather than the Fireball from Elide Fire.  [*Id.* at ¶ 53].

Plaintiff initiated this lawsuit on April 5, 2021, naming only AFG as a Defendant.  *See* [Doc. 2].   After AFG filed a motion to dismiss, *see* [Doc. 23], Plaintiff filed an Amended Complaint as a matter of right on August 3, 2021, asserting claims against AFG, Mr. Van Der Jagt, and ten Doe Defendants.  [Doc. 30].[4]  In the Amended Complaint, Plaintiff asserts the following claims for relief: (1)  infringement of the '382 Patent against all Defendants; (2) false or misleading advertising under the Lanham Act, 15 U.S.C. § 1125(a)(1), against all Defendants; and (3) false or misleading advertising under the Colorado Consumer Protection Act ("CCPA"), Colo. Rev. Stat. § 6-1-101 *et seq.*, against all Defendants.  *See generally* [*id.*].  Mr. Van Der Jagt has not entered an appearance in this matter, and the docket does not reflect that he has been served.

Defendant AFG filed a Motion to Strike, *see* [Doc. 34], which this court denied.  [Doc. 37].  Thereafter, AFG filed the instant Motion to Dismiss.  [Doc. 44-1].  In its Motion, AFG argues that Plaintiff's claims against it should be dismissed on the following grounds: (1) Plaintiff fails to allege sufficient facts to state a claim for direct patent infringement; (2) Plaintiff fails to allege sufficient facts to state a claim for indirect patent infringement; (3) the allegations against the Doe Defendants are insufficiently pled; and (4) Plaintiff fails to allege facts demonstrating that Plaintiff has the right to bring this patent-infringement lawsuit.  [*Id.* at 1].  In Response, Plaintiff argues that (1) it has standing to bring this lawsuit; and (2) its patent-infringement claims are sufficiently pled.  [Doc. 49 at 2-5].  AFG has since replied.  [Doc. 50].  Because the Motion is ripe for consideration, I consider the Parties' arguments below.

---

[4] AFG's first motion to dismiss was denied as moot upon the filing of the Amended Complaint. [Doc. 32].

## LEGAL STANDARD

Under Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a motion under Rule 12(b)(6), the court must "accept as true all well-pleaded factual allegations . . . and view these allegations in the light most favorable to the plaintiff." *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010) (quoting *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)). A plaintiff may not rely on mere labels or conclusions, "and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Rather, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (explaining that plausibility refers "to the scope of the allegations in a complaint," and that the allegations must be sufficient to nudge a plaintiff's claim(s) "across the line from conceivable to plausible."). The court must ultimately "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).

## ANALYSIS

### I.     The Right to Bring Suit

Among other arguments, AFG asserts that Plaintiff has not demonstrated that it has a right to sue for infringement of the '382 Patent, and thus dismissal of Plaintiff's claims is appropriate. [Doc. 44-1 at 10]. First, AFG argues that "[s]tatus as an exclusive licensee is insufficient to bring a lawsuit for infringement of the patent." [*Id*. at 7]. Instead, AFG argues, a licensee must have been transferred "all substantial rights" to the patent in order to sue for infringement of the patent;

AFG asserts that no such transfer occurred here.  [*Id.* at 8-9].  In Response, Plaintiff argues that it "has standing" to bring this lawsuit because a Memorandum of Agreement ("MOA")[5] transfers all substantial rights in the '382 Patent to Plaintiff.  [Doc. 49 at 2-3].  In the alternative, Plaintiff suggests that the MOA grants exclusionary rights to Plaintiff, and thus Plaintiff "has standing to proceed with this litigation either with or without the patent owner." [*Id.* at 4].[6]  Because Plaintiff's Response raises arguments that might implicate this court's subject-matter jurisdiction, *see Hernandez v. United Builders Serv., Inc.*, No. 18-cv-02019-RM-SKC, 2019 WL 4744788, at *4 (D. Colo. Sept. 30, 2019) (explaining that constitutional standing is jurisdictional in nature), the court addresses the  arguments concerning Plaintiff's right to bring this lawsuit first.

As a preliminary matter, the court must ascertain the exact nature of AFG's argument that Plaintiff "has no right to bring suit for patent infringement."  [Doc. 44-1 at 9].  Although AFG does not raise any "standing" argument nor cite to Rule 12(b)(1) in its Motion to Dismiss, *see generally* [*id.*], Plaintiff's frames AFG's argument as asserting a lack of standing, and responds accordingly.  *See* [Doc. 49 at 2].  Plaintiff argues that it has standing to bring this lawsuit because (1) the MOA transfers all substantial rights in the '382 Patent to Plaintiff, [*id.* at 3]; and (2) even if there was no transfer of all substantial rights, the MOA granted exclusionary rights to Plaintiff. [*Id.* at 4].  In its Reply, AFG argues that "regardless of standing, there is no right under the patent laws, 35 U.S.C. § 281, to bring a suit for patent infringement unless one possesses 'all substantial rights' under the patent."  [Doc. 49 at 2-3].

---

[5] *See supra* n.2.  Because the MOA is referenced in the Amended Complaint, [Doc. 30 at ¶ 22], and is central to Plaintiff's claims, [*id.*], the court may consider the MOA in ruling on the Motion to Dismiss.  *Thomas*, 765 F.3d at 1197.

[6] Plaintiff also asserts that, should this court find that there was no transfer of substantial rights in the '382 Patent to Plaintiff, "leave to amend should be granted to join the patent holder to this action." [Doc. 49 at 4].  This court has already reminded the Parties that Local Rule 7.1(d) requires that a motion be made in a separate filing.  *See* [Doc. 37 at 8 n.6].

The court respectfully finds that both Parties have misinterpreted the applicable case law and the nature of both the constitutional and statutory requirements to bring a patent infringement claim.  Accordingly, the court first sets forth the applicable law before turning to the Parties' arguments.

## A.    Applicable Standards

***Standing Generally***.  "The Supreme Court's standing jurisprudence contains two strands: Article III standing, which enforces the Constitution's case-or-controversy requirement, . . . and prudential standing[,] which embodies judicially self-imposed limits on the exercise of federal jurisdiction." *Wilderness Soc. v. Kane Cty.*, 632 F.3d 1162, 1168 (10th Cir. 2011) (internal quotations omitted) (alteration in original).  Article III standing, or constitutional standing, is a jurisdictional prerequisite to suit and requires "(1) an 'injury in fact,' (2) sufficient 'causal connection between the injury and the conduct complained of,' and (3) a 'likel[ihood]' that the injury 'will be redressed by a favorable decision.'" *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157-58 (2014) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (alterations in original)).  Meanwhile, the prudential standing doctrine is comprised of "judicially self-imposed limits on the exercise of federal jurisdiction that are founded in concern about the proper—and properly limited—role of the courts in a democratic society." *Hill v. Warsewa*, 947 F.3d 1305, 1309 (10th Cir. 2020) (quotation omitted).  This doctrine encompasses various limitations, including the general prohibition on a litigant's raising another person's legal rights. *Wilderness Soc.*, 632 F.3d at 1168.  In contrast to constitutional standing, "prudential standing is not a jurisdictional limitation and may be waived." *Niemi v. Lasshofer*, 770 F.3d 1331, 1345 (10th Cir. 2014).

***Standing in Patent Cases***.  The Federal Circuit has "recognized three categories of plaintiffs in patent infringement cases": (1) a patentee, "*i.e.*, one with 'all rights or all substantial rights' in a patent," who "can sue in its own name;" (2) a licensee with "exclusionary rights," who can sue "along with the patentee;" and (3) a licensee who *does not* have exclusionary rights, who *cannot* sue for patent infringement, "even along with the patentee." *Lone Star Silicon Innovations LLC v. Nanya Tech. Corp.*, 925 F.3d 1225, 1228 (Fed. Cir. 2019).   "The touchstone of constitutional standing in a patent infringement suit is whether a party can establish that it has an exclusionary right in a patent that, if violated by another, would cause the party holding the exclusionary right to suffer legal injury." *WiAV Sols. LLC v. Motorola, Inc.,* 631 F.3d 1257, 1265 (Fed. Cir. 2010).  The Federal Circuit has recognized that "those who possess 'exclusionary rights' in a patent suffer an injury when their rights are infringed."  *Lone Star*, 925 F.3d at 1234 (citing cases).  Where a claimant alleges that a defendant has infringed its exclusionary rights in a patent, "[t]his is enough to confer standing at the pleadings stage." *Id.*

***Statutory Requirements to Sue for Patent Infringement***.  Section 281 of Title 35 of the United States Code provides a remedy for a "patentee" in the case of patent infringement.  *See* 35 U.S.C. § 281.  The statutory requirements of § 281 do not implicate standing or this court's subject-matter jurisdiction.  *See Lone Star*, 925 F.3d at 1235 (citing *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 128 n.4 (2014)).  Indeed, Article III "establish[es] when a plaintiff may invoke the judicial power," while § 281 "establish[es] when a party may obtain relief under the patent laws."  *Id.*  For this reason, an argument that a plaintiff fails to meet the statutory requirements for suit under § 281 is more properly raised in a motion under Rule 12(b)(6) than 12(b)(1).  *Id.*

With respect to § 281's provision of an infringement remedy to a "patentee," this "includes the original patentee (whether the inventor or original assignee) and 'successors in title.'" *Lone Star*, 925 F.3d at 1229 (quoting 35 U.S.C. § 100(d)).  A successor in title is the party which holds legal title to the patent. *Morrow v. Microsoft Corp.*, 499 F.3d 1332, 1339 (Fed. Cir. 2007).  "If the party asserting infringement is not the patent's original patentee, 'the critical determination regarding a party's ability to sue in its own name is whether an agreement transferring patent rights to that party is, in effect, an assignment or a mere license.'" *Lone Star*, 925 F.3d at 1229 (quoting *AsymmetRx, Inc. v. Biocare Med., LLC*, 582 F.3d 1314, 1319 (Fed. Cir. 2009)).  A transfer of rights is an "assignment" if the transfer is of "all substantial rights" in the patent. *Id.*

But even where no transfer of all substantial rights—and thus, no assignment—has occurred, a party with "exclusionary rights" may still sue for patent infringement under § 281, so long as the patentee is joined in the lawsuit.  *See Lone Star*, 925 F.3d at 1229 ("If a party cannot bring suit in its own name, it may still bring suit along with the patentee so long as it possesses 'exclusionary rights.'"); *see also Morrow*, 499 F.3d at 1340 (explaining that exclusionary rights "must be enforced through or in the name of the owner of the patent, and the patentee who transferred these exclusionary interests is usually joined to satisfy prudential standing concerns") (quotation omitted); *Luminara Worldwide, LLC v. Liown Elecs. Co*., 814 F.3d 1343, 1349 (Fed. Cir. 2016).

Thus, Plaintiff's argument that it may sue "with or without the patent owner" as an exclusive licensee, [Doc. 49 at 4], is not correct, and AFG's argument that "regardless of standing, there is no right under the patent laws . . . to bring suit for patent infringement unless one possesses 'all substantial rights' in the patent," [Doc. 50 at 2-3], similarly paints an incomplete picture of the § 281 requirements.  An exclusive licensee who does not possess "all substantial rights" is not

completely barred from bringing a patent infringement lawsuit; rather, an exclusive licensee may sue for patent infringement, so long as the exclusive licensee has joined the patentee under § 281. *Lone Star*, 925 F.3d at 1229.

### B.    Analysis

As set forth above, AFG argues that Plaintiff cannot sue for patent infringement because under § 281, "status as an 'exclusive licensee' is insufficient to bring a lawsuit for infringement of the licensed patent" and that there has been no transfer of all substantial rights in the '382 Patent. [Doc. 44 at 7].  The court construes this argument as implicating not constitutional standing, but the non-jurisdictional statutory requirements of § 281.  The court addresses the Parties' arguments below.

***All Substantial Rights***.  AFG first argues that, based on the MOA, there has been no transfer of all substantial rights in the '382 Patent to Plaintiff.  [Doc. 44 at 9-10].  Plaintiff disagrees, arguing that the MOA transferred all substantial rights.  [Doc. 49 at 3].  According to Plaintiff, the "critical question" in determining whether all substantial rights have been transferred "is whether there is exclusivity or not," citing *Textile Products v. Mead Corp.*, 134 F.3d 1481, 1484 (Fed. Cir. 1998).  [*Id.*].  Plaintiff argues that the MOA's transfer of the right to prosecute patent infringement within the United States to Plaintiff is sufficient to constitute a transfer of all substantial rights in the '382 Patent to Plaintiff.  [*Id.* at 3-4].

The court respectfully disagrees with Plaintiff's reliance on *Textile Products* to assert that the "critical question" in the all-substantial-rights determination is "whether there is exclusivity." The passage from *Textile Products* cited by Plaintiff discusses when a licensee becomes an "exclusive" licensee—which is a separate inquiry from whether there has been a transfer of all substantial rights.  *See* 134 F.3d at 1484 ("Determining whether a licensee is an exclusive licensee

or a bare licensee is a question of ascertaining the intent of the parties to the license as manifested by the terms of their agreement and examining the substance of the grant. . . . Because patent rights are rights to 'exclude others,' *see* 35 U.S.C. § 154(a)(1), a licensee is an exclusive licensee only if the patentee has promised, expressly or impliedly, that 'others shall be excluded from practicing the invention' within the field covered by the license."); *see also Propat Int'l Corp. v. Rpost, Inc.*, 473 F.3d 1187, 1193 (Fed. Cir. 2007) (explaining the difference between a transferee of all substantial rights and an exclusive licensee); *Bushnell, Inc. v. Brunton Co.*, 659 F. Supp. 2d 1150, 1158 n.9 (D. Kan. 2009) (stating that an exclusive licensee "holds fewer than . . . all substantial rights").

Indeed, the inquiry as to whether all substantial rights have been transferred involves more than a consideration of "exclusivity;" to determine whether there has been a transfer of all substantial rights in a patent, the court considers the "totality" of the transferring agreement. *Lone Star*, 925 F.3d at 1231. While the Federal Circuit has not "establish[ed] a complete list of the rights whose holders must be examined to determine whether a licensor has transferred away sufficient rights to render an exclusive licensee the owner of a patent," *Alfred E. Mann Found. For Sci. Rsch. v. Cochlear Corp.*, 604 F.3d 1354, 1360 (Fed. Cir. 2010), relevant factors include:

> the scope of the licensee's right to sublicense, the nature of license provisions regarding the reversion of rights to the licensor following breaches of the license agreement, the right of the licensor to receive a portion of the recovery in infringement suits brought by the licensee, the duration of the license rights granted to the licensee, the ability of the licensor to supervise and control the licensee's activities, the obligation of the licensor to continue paying patent maintenance fees, and the nature of any limits on the licensee's right to assign its interests in the patent.

*Id.* at 1360-61. The Federal Circuit tends to focus on "two salient rights: enforcement and alienation," *Lone Star*, 925 F.3d at 1231, and has further stated that "the nature and scope of the exclusive licensee's purported right to bring suit, together with the nature and scope of any right

12

to sue purportedly retained by the licensor, is the most important consideration." *Alfred E. Mann Found.*, 604 F.3d at 1361.

Weighing these factors, the court concludes that the MOA, which is brief in nature, does not transfer all substantial rights in the '382 Patent to Plaintiff. *See Lone Star*, 925 F.3d at 1232-34 (determining whether there had been a transfer of all substantial rights at the motion-to-dismiss stage). Notably, while the MOA does permit Plaintiff some enforcement rights, Plaintiff's ability to sue for infringement as a licensee is conditional, as the MOA provides that the patent owner must authorize any prosecution efforts and provides that the patent owner must verify all evidence submitted to the court. [Doc. 30-3 at 3, ¶ 5.1]. In addition, any damages rewarded to Plaintiff must be evenly split with the patent owner. [*Id.* at ¶ 5.6]. Moreover, the MOA provides that the license provided to Plaintiff is non-transferable, *see* [*id.* at 2, ¶ 1], and the patent owner expressly "retains the right to use the [Fireball] and the Elide Fire Trademarks under the terms set forth in the Distributor Agreement."[7] [*Id.* at ¶ 4]. Finally, the Licensor retains rights within the litigation itself. [*Id.* at ¶¶ 5.4, 5.5].

The conditional enforcement rights, accompanied by the non-transferability of the license and the retainment of the rights by the licensor, weigh against a finding that all substantial rights in the '382 Patent have been transferred to Plaintiff. *See, e.g.*, *Intell. Prop. Dev., Inc. v. TCI Cablevision of Cal., Inc.*, 248 F.3d 1333, 1342, 1345 (Fed. Cir. 2001) (where licensor retained, *inter alia*, the right to prevent assignment of license; the right to require licensee to obtain its consent prior to initiating litigation; and the right to receive half of profits realized from litigation, the transfer of rights did not include all substantial rights); *BioCell Tech. LLC v. Arthro-7*, No.

---

[7] Plaintiff does not cite the Distributor Agreement, and it does not appear that the Distributor Agreement has been attached to the Amended Complaint.

SACV 12-00516-JVS-RNBX, 2012 WL 12892937, at *5 (C.D. Cal. Nov. 19, 2012) (unqualified bar on the transfer of the licensee's interests in the patent weighed against a finding that all substantial rights were transferred); *cf. Propat Int'l Corp.*, 473 F.3d at 1194 (finding that a right to transfer interest in a patent is "important" indicator of ownership of the patent).  Plaintiff has made no argument and has cited no authority demonstrating that, despite these factors, the MOA nevertheless transferred all substantial rights in the '382 Patent.  *See generally* [Doc. 49].[8] Accordingly, the court finds that the MOA does not transfer all substantial rights to Plaintiff.

> **_Exclusive Licensee_**.  The court's above conclusion, however, does not end its inquiry.  As set forth above, the absence of a transfer of all substantial rights does not necessarily preclude a licensee from suing for patent infringement; rather, a licensee may sue for patent infringement so long as the licensee is the exclusive licensee and joins the patentee in the lawsuit.  *See Lone Star*, 925 F.3d at 1236.

> AFG does not argue that Plaintiff cannot bring a lawsuit as the exclusive licensee in the event that Plaintiff were to join the patent owner in this suit.  *See* [Doc. 44-1].  Instead, AFG focuses on a lack of a transfer of all substantial rights.  *See* [*id.* at 7-10].  However, insofar as AFG's argument that the "Status of Plaintiff as an Exclusive Licensee is Insufficiently [Pled]," *see* [*id*. at 7], could be construed as an attack on the sufficiency of Plaintiff's allegations that it is the exclusive licensee of the '382 Patent, the court respectfully disagrees.

---

[8] In its Response, Plaintiff asserts that "[t]he recitals of the MOA refer to the transfer of" "all right, title, and interest in" the Fireball.  [Doc. 49 at 3 (quoting [Doc. 30-3 at 2])].  This assertion is not supported by the plain language of the MOA.  Rather, the "recitals" state that the patent owner "is the owner of all right, title, and interest in" the Fireball, but does not purport to transfer such "right, title, and interest"—rather, the MOA provides for a non-transferable license to (1) the '382 Patent; (2) the Fireball; and (3) the Elide Fire trademarks.  *See* [Doc. 30-3 at 2, ¶¶ 1-3].  Indeed, the MOA expressly states that the patent owner retains the right to use the Fireball and the related trademarks. [*Id.* at ¶ 4].

The Amended Complaint alleges that Plaintiff is "the exclusive licensee of the '382 Patent and the exclusive distributor of products covered by the '382 Patent" in the United States. [Doc. 30 at ¶ 2]. It further states that Plaintiff "has the exclusive rights within the U.S. to use, sell, and import the Fireball." [*Id.* at ¶ 53]. It also suggests that, as an exclusive licensee, Plaintiff's permission is required prior to any third party's use, importation, or sale of the Fireball. [*Id.* at ¶ 8]. Finally, Plaintiff has attached to its Amended Complaint the MOA, which provides that the patent owner has granted Plaintiff an "exclusive, non-transferrable license to the '382 Patent in the United States." [Doc. 30-3 at 2].

The court finds that these allegations are sufficient, at the pleading stage, to allege that Plaintiff is the exclusive licensee of the '382 Patent in the United States. An "exclusive licensee" is "a beneficial owner of some identifiable part of the patentee's bundle of rights to exclude others." *Ortho Pharm. Corp. v. Genetics Inst., Inc.*, 52 F.3d 1026, 1032 (Fed. Cir. 1995). "The licensee must hold *some*, but not necessarily *all* of the proprietary sticks in the bundle, and similarly, it need "only be able to exclude 'others,' not *all* others." *Abbott Lab'ys v. Sandoz, Inc.*, No. 05 C 5373, 2010 WL 1948185, at *3 (N.D. Ill. May 12, 2010) (*quoting Ropak Corp. v. Plastican, Inc.*, No. 04-C5422, 2005 WL 2420384, at *2-3 (N.D. Ill. Sept. 30, 2005)). Moreover, "[a] licensee can be deemed exclusive where the license pertains to less than all . . . of the rights granted under the patent, such as where the licensee has obtained only the exclusive right to sell the patented invention ." *Amgen, Inc. v. Chugai Pharm. Co., Ltd.*, 808 F. Supp. 894, 900 (D. Mass. 1992).

Here, Plaintiff alleges that it is the exclusive licensee of the '382 Patent in that it has the exclusive right to use, sell, or import the patented invention. [Doc. 30 at ¶¶ 2, 8, 53; Doc. 30-3 at 2, ¶¶ 1-3]. The court finds these allegations sufficient to establish that Plaintiff is "a beneficial

owner of some identifiable part of the patentee's bundle of rights to exclude others." *Ortho Pharm.*, 52 F.3d at 1032; *cf. Lone Star*, 925 F.3d at 1234, 1238 (finding that, for standing purposes, allegations that plaintiff possessed exclusionary rights sufficiently alleged that the plaintiff was the exclusive licensee). The court is thus not persuaded by AFG's argument.

*Joinder of the Patent Owner*. Because the court finds that, based on the allegations in the Amended Complaint, Plaintiff has not been transferred all substantial rights in the '382 Patent but is nevertheless an exclusive licensee of the '382 Patent, the court finds that joinder of the patent owner is required for this litigation to proceed.[9] *See Lone Star*, 925 F.3d at 1237. The Federal Circuit has "consistently said that the cure for this defect is to join the patent owner and not to dismiss the case." *Id.* at 1238. Thus, although AFG suggests that dismissal of this case is appropriate based on Plaintiff's lack of a "right" to bring suit, *see* [Doc. 44-1 at 10], based on the Federal Circuit's directive, the court finds that dismissal is not appropriate at this juncture and will instead order Plaintiff to join the appropriate patent owner. *See, e.g.*, *Integrity Worldwide, Inc. v. Rapid-EPS Ltd.*, No. 3:17-cv-00055, 2021 WL 3130082, at *4 (N.D. Tex. July 22, 2021) (denying motion to dismiss and allowing plaintiff to join patent owner); *Bobcar Media, LLC v. Aardvark Event Logistics, Inc.*, 354 F. Supp. 3d 375, 384 (S.D.N.Y. 2018) (permitting plaintiff to file a motion for joinder instead of dismissing case); *Great Lakes Intell. Prop. Ltd. v. Sakar Int'l, Inc.*, 516 F. Supp. 2d 880, 893 (W.D. Mich. 2007) (declining to dismiss case in favor of ordering joinder of the patent owner).

---

[9] The Amended Complaint does not identify the patent owner. *See generally* [Doc. 30]. While the Motion to Dismiss states, based on USPTO documents, that the inventor of the '382 Patent "assigned his invention and patent rights to a Thailand company named Siam Safety Premier Co., Ltd., and in an assignment . . ., Siam Safety Premier Co., Ltd. assigned a 'partial interest' in the patent application eventually issuing as the ''382 Patent to a Thailand company named Siam Safety Empire Co., Ltd.," [Doc. 44-1 at 7], the court does not make any findings as to the current owner or patentee.

The court notes that, while Federal Circuit has indicated that Rule 19 governs a Plaintiff's joinder of a patent owner in a lawsuit, *see Lone Star*, 925 F.3d at 1237, the Tenth Circuit has held that Rule 19 "does not provide a joinder mechanism for [a] plaintiff." *Shaw v. AAA Eng'g & Drafting Inc.*, 138 F. App'x 62, 66 (10th Cir. 2005) (unpublished) (treating Rule 19 motion as a motion under Rule 21). Because this issue is not presently before the court and has not been briefed by the Parties, the court does not pass on or advise Plaintiff as to the proper method for joining the patent owner in this lawsuit. Accordingly, Plaintiff is **ORDERED** to file appropriate papers to add the patent owner to this lawsuit within **30 days** of the date of this Order. Failure to do so may lead to dismissal of this action. Plaintiff is hereby **ADVISED** that this directive does not equate to a grant of leave to amend its Amended Complaint. Should Plaintiff now, or in the future, seek to amend its Amended Complaint in conjunction with or in addition to filing appropriate papers to add the patent owner to the lawsuit, it must file an appropriate motion under the Federal Rules of Civil Procedure.

## II. Rule 12(b)(6) Arguments

Due to the court's conclusion that Plaintiff must add the patent owner in this litigation, the court declines to pass on AFG's arguments that Plaintiff's allegations of either direct or indirect infringement are insufficient to state a claim under Rule 12(b)(6). *See* [Doc. 44-1 at 4-5]. However, the court simply notes that the Local Rules of Practice for this District require that all motions must "be supported by a recitation of legal authority," *see* D.C.COLO.LCivR 7.1(d), and that undeveloped arguments lacking analysis or citations to legal authority are generally deemed waived. *See LNV Corp. v. Hook*, No. 14-cv-00955-RM-HR, 2018 WL 10245906, at \*2 (D. Colo. June 21, 2018). Thus, AFG is advised that, should it file a renewed motion to dismiss, simply directing the court to another case for "[a] detailed exposition regarding the requirements for

sufficiently alleging indirect patent infringement" or to a report from The Sedona Conference for "a detailed set of indirect infringement allegations," *see* [Doc. 44-1 at 4], is insufficient to meet its burdens on a motion to dismiss. Rather, AFG must raise actual arguments, supported by legal authority, explaining why it believes Plaintiff's allegations are insufficient. *See Sheward v. City of Henryetta*, 810 F. App'x 684, 689 (10th Cir. 2020) (unpublished) ("To advance a reasoned argument, [a litigant] must support [its] position with legal argument and authority."); *Bronson v. Swensen*, 500 F.3d 1099, 1104 (10th Cir. 2007) (a court may decline to consider arguments inadequately presented); *Est. of Papadakos v. Norton*, 663 F. App'x 651, 657 n.4 (10th Cir. 2016) (unpublished) (a "single sentence" is insufficient to adequately brief an issue).[10]

Because the court does not find that dismissal is warranted at this juncture, the Motion to Dismiss is **DENIED without prejudice**. Should Plaintiff join the patent owner as a party to this lawsuit, Defendant may file a renewed motion to dismiss consistent with the Federal Rules of Civil Procedure.

## ORDER TO SHOW CAUSE

As set forth above, Plaintiff filed the Amended Complaint on August 3, 2021, at which time he named Mr. Van Der Jagt and the ten Doe Defendants for the first time in this lawsuit. [Doc. 30]. Thus, Plaintiff's deadline to serve Mr. Van Der Jagt and the Doe Defendants was November 1, 2021. *See* Fed. R. Civ. P. 4(m).[11] On August 19, 2021, Plaintiff filed a Motion for

---

[10] To be clear, the Parties should not construe this as a holding that AFG has waived any arguments with respect to the sufficiency of Plaintiff's infringement allegations.

[11] "When an amended complaint names a new defendant, as is the case here, a plaintiff has 90 days from the date on which the amended complaint is filed to serve that defendant with process." *Lunnon v. United States*, No. CV 16-1152 MV/JFR, 2020 WL 1820499, at *9 (D.N.M. Feb. 21, 2020), *report and recommendation adopted*, 2020 WL 1329821 (D.N.M. Mar. 23, 2020) (citing *Bolden v. City of Topeka*, 441 F.3d 1129, 1148 (10th Cir. 2006)); *see also* Wright & Miller et al., Fed. Prac. & Proc. Civ. § 1137 (4th ed.) ("[A]dding a new party through an amended complaint initiates a new timetable for service upon the added defendant.").

Alternative Service Under FRCP Rule 4(e), seeking to serve Mr. Van Der Jagt by serving AFG's counsel, Robert Purcell. [Doc. 40]. This court denied the Motion for Alternative Service without prejudice upon concluding that (1) the motion was procedurally deficient, *see* [Doc. 47 at 6]; (2) Plaintiff had failed to meet its burden of demonstrating due diligence in attempting to service Mr. Van Der Jagt in this matter, [*id.* at 7-10]; and (3) Plaintiff had failed to demonstrate that future attempts at service would be futile. [*Id.* at 10-11].

Plaintiff did not file proof of service by the November 1, 2021 deadline and has not moved to extend its deadline to serve Mr. Van Der Jagt or the Doe Defendants.[12] And while Plaintiff filed a "Declaration of Non-Service" on December 23, 2021, *see* [Doc. 59],[13] this belated filing does not request any relief and does not operate to extend Plaintiff's deadline. This Order to Show Cause follows.

Rule 4(m) provides that "[i]f a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time." Fed. R. Civ. P. 4(m); *cf.* D.C.COLO.LCivR 41.1 (providing for dismissal with or without prejudice for failure to comply with the Federal Rules of Civil Procedure). "But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period." Fed. R. Civ. P. 4(m). Nearly three months have passed since Plaintiff's deadline to serve Mr. Van Der Jagt and the Doe Defendants lapsed. However, no proof of service has been filed and Plaintiff has

---

[12] In its September 14, 2021 order denying Plaintiff's Motion for Alternative Service, the court noted that, while unclear, it appeared that Plaintiff sought an extension of the time to serve Mr. Van Der Jagt. *See* [Doc. 67 at 11]. The court declined to extend the deadline because there was no indication or argument that Plaintiff could not then serve Mr. Van Der Jagt by the November 1, 2021 deadline. [*Id.* at 12].

[13] The court notes that the attempts at service reflected in the Declaration of Non-Service occurred after Plaintiff's November 1, 2021 deadline. *See* [Doc. 59 at 1].

not requested an extension of the Rule 4(m) deadline.  Accordingly, the court can only assume that Plaintiff either cannot effectuate service on Mr. Van Der Jagt or no longer intends to pursue its claims against Mr. Van Der Jagt.  Moreover, Plaintiff has not indicated that he has been able to identify any of the Doe Defendants through discovery, and thus, the court can only assume that such identification has not been made.

Accordingly, Plaintiff is **ORDERED** to **SHOW CAUSE** in writing and on or before **February 7, 2022**, why Plaintiff's claims against Mr. Van Der Jagt and the Doe Defendants should not be dismissed without prejudice for failure to comply with the Federal Rules of Civil Procedure and failure to serve.  Because four months have passed since this court denied Plaintiff's Motion for Alternative Service, nearly three months have passed since the deadline to serve, and Plaintiff has made no attempt to extend the service deadline or otherwise move for alternative service, Plaintiff is expressly advised that a successive motion for alternative service will not constitute a sufficient response to this Order to Show Cause.

### CONCLUSION

For the reasons stated herein, **IT IS ORDERED** that:

(1)  Auto Fire Guard's Motion to Dismiss the First Amended Complaint [Doc. 44] is **DENIED without prejudice**;

(2)  Plaintiff **SHALL FILE** appropriate papers to add the patent owner as a party to this lawsuit within **30 days of the date of this Order**; and

(3)  Plaintiff **SHALL SHOW CAUSE**, on or before **February 7, 2022**, why Plaintiff's claims against Mr. Van Der Jagt and the Doe Defendants should not be dismissed without prejudice for failure to serve under Rule 4(m).

DATED:  January 31, 2022                BY THE COURT:

_____
Nina Y. Wang
United States Magistrate Judge